# UNITED STATED BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
## Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| LANCE R. SLAYTON and | ) Bankruptcy Case No. 05-44430-HRT |
| TERRIE SLAYTON, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| EDWARD P. MEADE, | ) Adversary No. 06-1028 HRT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LANCE R. SLAYTON, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON PLAINTIFF'S MOTION
## TO ALTER OR AMEND JUDGMENT

This matter comes before the Court on *Plaintiff's Motion to Alter or Amend Judgment* (docket #74) [the "Motion"]. The Motion seeks reconsideration of the Court's *Order on Complaint to Determine Dischargeability of Indebtedness 11 U.S.C. § 523(a)(2)(A)* dated September 24, 2007, (docket #72) [the "Order"].

In the Motion, Plaintiff asserts that "this Court has made four correctible [sic] errors in its Findings of Facts and Conclusions of Law: (a) The Court has misstated or misunderstood the testimony of Ed Meade; (b) This Court has ignored the logical nexus and proximate causation of the loss of Meade's full $100,000; (c) this Court has applied the wrong pre-judgment rate of interest to Meade's losses; and (d) this Court failed to award Meade as part of his recoverable damages his attorney's fees and legal costs."

Upon the Court's receipt of the Motion, it reviewed its Order and relevant portions of the trial record. After that review, and after listening to and considering the parties' arguments, the Court remains comfortable with its rendering of the pertinent portions of Meade's testimony. The Court also believes that its rationale for the pre-judgment interest that it awarded was adequately discussed.

The Court will briefly touch on the attorney fee issue, but its primary area of concern is the issue of causation. The Court finds that it did not clearly articulate, in its original Order, the analysis with respect to proximate cause of the damages the Court awarded to the Plaintiff.

The Court scheduled the Motion for argument both to solicit the parties views on the causation issue and to allow Slayton to raise whatever issues form the basis for his *Notice of Appeal* which was filed shortly after Plaintiff's Motion.[1]

Both Slayton and Meade endorse the First Circuit BAP's analysis in the case of *In re Creta*, 271 B.R. 214 (B.A.P. 1st Cir. 2002). That court refers to the Restatement (Second) of Torts (1976) for guidance on the question of causation. *Id.* at 218-19. That is consistent with the teachings of the Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437 (1995). There, the Supreme Court looked to the Restatement to divine the level of reliance necessary to be proven by a plaintiff seeking an order of nondischargeability for fraud under § 523(a)(2)(A) because a fraud claim under § 523(a)(2)(A) is analyzed as a claim of common law fraud. *Id.* at 65, 441. The court in *Creta* recognized that it is proper to examine causation under § 523(a)(2)(A) according to the standards set out in Restatement. Specifically, a court must find both "causation in fact" (Restatement § 546) and "proximate cause" (Restatement § 548A). *In re Creta*, 271 B.R. at 219.

Meade encourages the Court to separate its analysis with respect to causation and damages. However, it is not clear to the Court how the two issues may be divorced from one another. The damages that may be awarded in a fraud action are directly tied to the loss caused by the misrepresentation. Restatement (Second) Torts § 549 (1976).

The Court's discussion in its original Order explained in some detail how it concluded Meade has suffered $30,000 in damages as a result of Slayton's lie as to the amount needed for the earnest money deposit. The Court's reexamination of the issue does not cause it to alter that opinion. The Court's determination that Meade was damaged only to the extent that Slayton inflated the amount necessary to complete the earnest money deposit is supported by the evidence. While the Court finds that Slayton intended to deceive Meade to the extent of that $30,000 overstatement, it cannot find that he intended to deceive Meade in any other respect and

---

[1] In both *Defendant's Prehearing Memorandum Regarding Plaintiff's Motion to Alter of Amend Judgment*, and at oral argument, Defendant's counsel was silent with respect to grounds for the appeal. Upon the Court's inquiry, counsel candidly admitted that Slayton had not communicated with his counsel and the appeal was filed to insure that Slayton's rights were protected. However, the particular attorney who appeared to argue the Motion is not the primary attorney handling the case and he also acknowledged that he may not be fully familiar with all aspects of the case.

it cannot find that Slayton intended or expected to repay Meade anything less than the full amount promised.

Meade frames the question before the Court as whether or not he would have loaned Slayton $100,000 if he had known that Slayton lied to him about what amount he needed. Stated in that manner, the answer to the question requires no further discussion.

In its Order, the Court implicitly framed the question, consistent with any fraud case, as what Meade did as a result of his reliance on Slayton's lie that he would not have done if Slayton had told him the truth instead. The answer to that question was not a matter of inference or speculation. In his testimony, Meade answered the question directly. He said if Slayton had truthfully requested $70,000, that is the amount he would have loaned him.

The difference in the two questions is not mere semantics. Meade's formulation of the question distorts the reality of the transaction. The only legitimate focus of the Court's inquiry is on what Meade did in reliance on Slayton's lie that he would not have done if he had been told the truth. To suppose that Meade would have refused Slayton's request for the loan if Slayton had been truthful about the necessary amount would be completely contrary to the evidence heard by the Court. To put it another way, Slayton's lie as to the amount needed was not material to whether or not Meade made the loan, but it was certainly material as to the amount that he loaned. Meade was not fraudulently induced to make the loan. He was fraudulently induced to make a loan that was $30,000 in excess of what he would have loaned if Slayton had been truthful.

For the Court to find causation in fact under Restatement § 546, it must find that Meade's reliance on Slayton's misrepresentation was "a substantial factor in determining the course of conduct that results in his loss." Certainly, the discussion in the original Order and the above discussion establish the existence of causation in fact. Without question, Meade loaned Slayton $100,000 instead of $70,000 as a result of Slayton's false statement.

Proximate cause, however, requires a closer nexus between the actual cause of Meade's loss and Slayton's misrepresentation. The rule stated in the Restatement § 548A is as follows:

> A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.

Restatement (Second) of Torts § 548A (1976).

The immediate cause of Meade's loss was Slayton's failure to perform his purchase obligation on his contract to buy the Tennyson Property. That failure was occasioned by the

failure of Hard Money Funding ["HMF"] to honor its loan commitment. The evidence presented at trial persuades the Court that Slayton's clear intention was to repay Meade the full amount of his loan with interest and that, had HMF honored its loan commitment, the fund of money from which Slayton intended to make that repayment would have been available to him. Thus, Slayton's lie was not the direct cause of Meade's loss, but it set in motion a sequence of events that led to Meade's loss. The more immediate cause was HMF's failure to honor its loan commitment. The question for the Court is whether it was "within the foreseeable risk of harm" created by Slayton's misrepresentation that Meade might suffer a loss caused by HMF's failure to honor its commitment. Restatement (Second) of Torts § 548A cmt. a (1976).

Proximate cause and foreseeability do not require a defendant to be clairvoyant. The Court need not find that Slayton expected or anticipated that HMF would not perform its commitment. The Court does need to find that, in this type of commercial real estate purchase transaction, a reasonable person would recognize that the funding source may fail to provide funding despite its written commitment. Any reasonable individual recognizes that the failure of the funding for a transaction of this type is possible and would likely to cause the deal to fail. Thus, HMF's breach of its funding commitment was within the foreseeable risk of harm created by Slayton's actions. Slayton certainly knew that the earnest money deposit was subject to forfeiture if he failed to close the deal. The Court, therefore, finds that the manner in which Meade suffered his loss was foreseeable by Slayton and that Meade has established proximate cause between Slayton's falsehood and his loss.

That causation analysis does not sweep in Meade's full $100,000 loan. The same analysis by which the Court finds that Slayton should have apprehended some risk that HMF may breach its loan commitment applies equally to Meade. Even though the specifics of the forfeiture provision were not a subject of discussion between Meade and Slayton, the very nature of an earnest money deposit in a real estate purchase transaction is that it secures that buyer's performance and is put at risk if a buyer defaults. Meade willingly assumed the customary risk that accompanies making any loan under the circumstances that were fully known to him. He did not assume that risk for the portion of the loan Slayton obtained through his false statement relating to the amount needed, but he certainly did assume that risk for the portion that was used as Meade intended it to be used.

As to the topic of attorney fees, bankruptcy courts recognize the "American rule" that "[t]he damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation." Restatement (Second) of Torts § 914(1) (1976); *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, ___ U.S. ___, 127 S. Ct. 1199, 1203-1204 (2007). Of course, fees may be awarded where "a statute or a contract provides expressly or impliedly for the recovery of counsel fees or other expenses." Restatement § 914(1) cmt a. In this case, there is no statute permitting an award of attorney fees nor is there a controlling

contract. To the extent that this Court has discretion to make an award of attorney fees, as Plaintiff argues, the Court declines to exercise that discretion.

In accordance with the above discussion, it is

**ORDERED** that the relief requested in *Plaintiff's Motion to Alter or Amend Judgment* (docket #74) is DENIED

DATED this 4th day of February, 2008.

BY THE COURT:

Howard R. Tallman, Chief Judge
United States Bankruptcy Court